Thank you. You may proceed. Thank you, Your Honor. Good morning, Your Honors. My name is John Einhorn from New Haven, Connecticut, and I represented Mr. Bick at trial and also on appeal, of course. Mr. Bick, Ian, is 21 years old. He's alleged to have committed these crimes, wire fraud, when he was a teenager. He lives at home with his parents, and he was sentenced to 36 months, of which he's already done about 60-some-odd days. This appeal raises substantial issues of questions of law. As the Court knows, a bail pending appeal doesn't require a finding that the district court erred or that reversal is the most likely possibility. It's only the presence of substantial questions of law that, if resolved in the appellant's favor Counsel, didn't Mr. Bick commit another offense while he was out of jail? No, Your Honor. We don't agree with that. That was never resolved. The government made many claims during the course of his incarceration and after trial that were never proven. The district court specifically said he takes no position on what happened after trial. The government does argue that they make many arguments about his conduct when he was out on bail for several years. No judges or magistrates ever bought those arguments. That was just the government's argument. But it's our position that if any of these questions, substantial questions, are resolved in his favor, then either a new trial would result or a lower sentence under U.S. v. Rendell, of course. That's the standard. Now, I'd like to just quickly raise what I believe are the four substantial issues of law here. The first wasn't raised in my memorandum and wasn't raised before the district court because this court just on December 1st resolved U.S. v. Algeheim. As the court knows, in Algeheim, it had to do with the loss categories, which defense lawyers and many judges have been upset about for years, as to how the sentencing commission set the guideline ranges for loss. This situation is almost identical to the situation in Algeheim. In Algeheim, as the court may know, Mr. Algeheim had a base offense level on wire fraud and theft of six. And it was tripled when you got to his adjusted offense level. In this case, Mr. Bick had a base offense level of seven, which went up to 26 almost four times by the time you added the district court enhancements. So it's definitely, we believe, on all fours with Algeheim. And as the court ordered in Algeheim, we believe that after argument, this case will be sent back to the district court for discussion of the loss issue. In this case, the loss, by the way, is $495,000 and change. The second substantial question of law, we believe, is under Crawford v. Washington. That's the confrontation issue. In this case, the government, at the end of trial, had an FBI agent take the witness stand and put into evidence several of these loan contracts, they were loans, without having the clients testify, the so-called victims testify. So I had no opportunity, the defendant had no opportunity to cross-examine them. Previously, on the other... Pretending those are hearsay? I believe they're hearsay, yes, and I believe they violated my client's... What's a loan document, a hearsay? Because it was a document that basically incriminated, it was testimonial, we believe. What it did was it incriminated my client. The government's claim was that he had all these investment contracts with people. We believe they were loans. And on the loans themselves, they said that the monies could be used for any purpose, any business purpose my client wanted. He had this drafted by a reputable attorney in Connecticut. And so the cross-examination of the other people... Makes it testimonial under Crawford, whatever Crawford now means? Well, that's a good question. Under Crawford, the court specifically said, and just reading from Crawford, we leave for another day... You're doing pretty well, so you can... I'm sorry, Your Honor. Go ahead. Crawford specifically says, we leave for another day any effort to spell out a comprehensive definition of testimonial. And in footnote 10, the Supreme Court also said, we realize this is going to leave some uncertainty. Now, I'm not saying we have to resolve that now. I'm just saying it raises a substantial question for this court when we do the appeal. The third argument we have, substantial legal argument, has to do with U.S. versus countrywide. Again, a fairly recent decision of this court, and that had to do with the government's burden of proving the fraudulent intent at the time of the inducement of the contract. Not necessarily brand-new law, but we believe that on many of these contracts, the government did not prove any fraudulent intent at the time of the inducement because even the testimony of the so-called victim said, yeah, we were borrowing money at high interest rates because we wanted to make a lot of money. And that's the third issue. And finally, the fourth substantial legal issue, we believe, had to do with the inconsistent verdict as to the money laundering. I won't go into it because it's more of a fact issue. What is Mr. Bick's report date? He's already reported. He was on October 4th. So he's in? He's in. He's been in about 60 days. The Bureau of Prisons put him in Fort Dix, not in a camp, in a low-security prison, although he has no criminal history. I can't get him moved, and it's not a good thing. He was a teenager when he committed these alleged crimes. Do you agree that the district court made a finding that he posed a significant risk in connection with possibly engaging in more fraud? Yes. I wanted to address that. The the No, no, no. I just want to know that you agree with that. Oh, absolutely. The district court, first of all, found he wasn't a risk of flight. No one claimed he was a risk of flight. But the district court specifically said the defendant has no insight about the significant risk in the future to engage in more fraud and money laundering. Well, it seems to me that there are conditions that can be fashioned around that concern about protecting the public. You have him at home. You have him in home confinement. He lives at home. You have him there with no access to internet. You have him there with no telephone. Essentially, you have him divorced from the public. I'm sorry. We'll hear from the government. Thank you. Thank you, Your Honor. May it please the court. Just briefly picking up where Your Honor mentioned, the 3143B1 requires that the defendant shall be detained unless he can show by a clear and convincing evidence that, among other requirements, that they are not a danger to the community and that their appeal would raise a substantial question of law and fact. As to the danger to the community issue, Your Honors, Judge Meyer found on a number of occasions that the defendant did not satisfy his burden by clear and convincing evidence that he was not a danger to the community. In fact, he wrote on one occasion, I believe in document 182 in the record, I simply have no confidence and can have no confidence that Mr. Bick is not and will not continue to engage in fraud. And he goes on to say, at least he has not shown in light of his conduct any clear and convincing evidence that he has not and will not return to his criminally fraudulent ways. So as Your Honor mentioned as you mentioned, Your Honor, that he, the judge did consider his conduct while on release, and while he didn't make a finding of a, you know, a criminal conviction, if you will, he found that he had violated his conviction and violated his conditions sufficiently that he was a danger to the community. That was done on October 4th, and the defendant was, you asked his report date, the defendant was detained that day because the judge had found him to have violated his condition on, for multiple reasons. Is that when he, because he didn't show up or? No, it's because he, he, among other reasons, he traveled to New York where he was not permitted to. He went and gambled at the Empire City Casino when he knew that he had a large restitution order of approximately $500,000 that would be due. And he also engaged in conduct of taking in more money based on false pretenses, telling a family that he would put their money towards a concert, took in $10,000 using his father's company's merchant account. He took in $10,000 saying it would go to a specific concert when, in fact, the artist that was represented to be appearing at the concert had said, no, they wouldn't appear at that particular concert. Then Mr. Where was he living at this time? Was he living at home? He was. He was at the same place where he would go back if we decided he should be released on bail. Yes. And Judge Meyer specifically mentioned in the hearing, which is, again, transcribed and in the record of Document 182, that he found that the father, I believe, was, to some extent, aiding and abetting, that's not the exact word he used, enabling. Yes, Your Honor. In the fact that the father was not only he living at home, but the father was a third party custodian. So what counsel has now proposed is that he would be, perhaps, have the mother as the third party custodian, and Judge Meyer certainly did not think that that would be appropriate. And, again, in this day and age with texting and cell phones, it's not the same. Did he have access to computers and telephones during the period when he was living at home? I believe not at the point prior to his being detained, Your Honor. But, additionally, if I may just address the second significant issue, is that there are no substantial question here likely to result in reversal or a new trial. Mr. Einhorn mentions for the first time today alchemy, and there was not a supplemental letter submitted, so, admittedly, I'm not as well versed as I would otherwise be on that case. But I can tell you that in this case there was a base offense of seven, loss of $496,000, a leadership role, an enhancement for money laundering, an enhancement for obstruction of justice, and Judge Meyer gave the defendant a below-guideline sentence. So, considering that it was a below-guideline sentence of 36 months when the guideline range was much higher, I don't think that would raise a substantial question. But he is so young. Well, and he defrauded a lot of people, Your Honor. I think over 27 victims lost approximately half a million dollars. He started the fraud by taking small amounts of money from some of his classmates in his senior year of high school. He presented himself as an entrepreneur who didn't need to go to college because he was making money over the Internet, making the – with buying and selling these thought he was making money. He would take in, for example, $5,000 and give back $7,500. And then they saw their child had made about a 50 percent return. Some of them took large amounts of money, including Ms. Burke, who was count six, of $50,000 expecting to get a commensurate return. They took some money out of their retirement because it had worked on a smaller level. And by presenting himself as a young Internet entrepreneur, I think he used his young age as part of a reason to entice these parents and, you know, people of our age, Your Honor, to give him money. What does that mean, our age? I would say still with many years ahead of us, Your Honor. I'm not going to join you. So he used his young age as part of the scheme, as part of his pitch that he was this Internet entrepreneur, and he continued it until, I believe, until 2015, when I think he was at that point 20 or 21. He was born in 1995, I believe. Thank you, counsel. Thank you, Your Honor. I just wanted to read something from the detention order, if I may. I won't argue. Okay. The government talks about my client – or Your Honor asked, I think, about committing fraud while on release. The district court specifically didn't base his detention on that. The court said, I'm basing the conclusion on two principal grounds. One, I'm not going to try and resolve the Mallow issues. That's the issues about anything that happened on release. I'm going to release it on two things. Number one, definitely the trip to New York, and number two, he's giving a false statement to probation about the trip to New York. Thank you. So we understand Mr. Bick is now incarcerated. We will issue our decision as soon as possible. We'll issue an order, if possible, today.